[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Julije Kish, brought a seven count complaint against the defendant, Irene Burgess. In the first count, the plaintiff alleges that he and the defendant opened a joint bank account to be used in connection with an export import business, and that the defendant withdrew $39,000 from this account. In the second count, the plaintiff claims that he purchased a car to be sold overseas, but that the defendant registered the car in her and her son's names and the plaintiff lost an anticipated profit of $15,000. In the third count, the plaintiff claims that he sent goods overseas to be sold for a profit, but that the defendant took possession of these goods and disposed of them herself, and that plaintiff lost $15,000 anticipated profit. The plaintiff alleges in the fourth count that he was never reimbursed by the defendant for certain expenditures he made on her behalf for her automobile in the total amount of $5,000. In the fifth count, the plaintiff contends that he spent $5,000 for various expenses incurred by the defendant including airline tickets. The plaintiff alleges in the sixth count that the defendant occupied his home in New Jersey without his permission and caused damage in the amount of $1,500 for food, lodging, telephone and other expenses. In the seventh count, the plaintiff claims that the defendant deprived him of property, including his car, and that he was damaged in the amount of $20,000. The plaintiff sought damages of $98,000.
The defendant denied the material allegations of the complaint except for the following allegations that were admitted: (1) the plaintiff and the defendant formed a business known as Balkan Art; (2) in December, 1990, the defendant removed $39,000 from a bank account of that business; (3) the plaintiff purchased a car and shipped it overseas in August, 1989; and (4) the defendant occupied the plaintiff's home in the beginning of December, 1990.
This case was referred to Attorney Margaret D. Northrup, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed her report containing the CT Page 5578-BBB following pertinent findings of fact: (1) that the defendant gave the plaintiff $38,870 of her own money, which was put in a joint checking account for their business, Balkan Art, and that in December, 1990, the defendant withdrew $39,000; (2) that the plaintiff purchased a Nissan in July, 1990, for $8,750. which was supposed to be shipped to Europe for sale, but eventually was registered in the defendant's name; (3) that after the parties terminated their social relationship, the defendant remained in the plaintiff's home for one week in December, 1990; and (4) that the proceeds of certain sales of art works by Balkan Arts were never received by the plaintiff.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the relationship between the plaintiff and the defendant was more of a social and personal than business nature, and that their business arrangements were never formalized in writing; (2) the plaintiff was justified in withdrawing her own investment of $39,000 in the business, after the parties' personal relationship deteriorated; (3) the Nissan belonged to the plaintiff and he is entitled to its value of $8,780; (4) the plaintiff spent $1,224.50 on the defendant's Honda for which he should be reimbursed; (5) the plaintiff's expenditure of $1,460 for airline tickets is reimbursable by the defendant; (6) the plaintiff loaned the defendant's son Daniel $1,500, which should be returned to the plaintiff; (7) the plaintiff should be reimbursed for $128.72 for toll calls that the defendant made while at the plaintiff's house; (7) the plaintiff is not entitled to recover the value of gifts he gave to the defendant as they were based on a "very close personal relationship;" and (8) the plaintiff did not sustain his burden of proof on his other claims.
The referee recommended that judgment should enter for the plaintiff in the amount of $13,093.22, plus $6,665.71 for prejudgment interest at 10% per year from December, 1990, to the date of her report in January, 1996, for a total recovery for the plaintiff in the amount of $19,748.93.
The plaintiff, who appeared pro se in these proceedings, moved to correct the referee's report pursuant to Practice Book § 438. The plaintiff sought corrections to reflect that: (1) the defendant's contribution to the business bank account was $31,870, not $38,870; (2) the plaintiff shipped goods overseas at his expense of $7,562, and the defendant never accounted for the goods or reimbursed him for shipping costs; (3) he should be CT Page 5578-CCC compensated for the time the defendant occupied his house in Newark; (4) he should be awarded $575 for shipping the Nissan overseas; (5) he was entitled to $3,990.27 as representing one half of the losses incurred by the business Balkan Art because of the defendant's mismanagement and deception; and (5) the plaintiff was entitled to an additional $4,744.05 for expenditures made on behalf of the defendant, including cash outlays and attorney's fees.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any substantive changes in her report or recommendation that judgment enter for the plaintiff, but she did increase the amount of damages by $575, the cost of shipping the Nissan to Rotterdam in December, 1990, and thus recommended a total of $13,668.22, plus prejudgment interest of $6,958, or a total recovery of $20,626.22.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated very recently in Elgar v. Elgar, 238 Conn. 839,848-49, ___ A.2d ___ (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoRomano v. Derby, 42 Conn. App. 624, 626, ___ A.2d ___ (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence," and, in addition, whether "[t]he conclusions drawn therefrom were CT Page 5578-DDD legally and logically correct." As stated in Romano v. Derby,
supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that although the plaintiff filed exceptions to the referee's report pursuant to Practice Book § 439, which exceptions repeat the assertion in his motion to correct,[1] he did not file with the exceptions a transcript for any of the three days of trial as required by Practice Book § 439. Thus, it is impossible for the court to ascertain whether there is support in the record for the referee's findings of fact because of the lack of a transcript.
It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file proper exceptions constitutes in effect a waiver of the right to attack the subordinate factual findings contained in the report. "[f]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard. . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 366, 508 A.2d 829
(1986).
A failure to file valid exceptions constitutes in effect a "waiver" of "any right to attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report.Beizer v. Goepfert, 28 Conn. App. 693, 706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
Furthermore, the plaintiff did not file any objections to the referee's report as authorized by Practice Book § 440. This CT Page 5578-EEE means that the plaintiff has waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were errors in rulings on the admission of evidence or in other rulings.Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301-02,552 A.2d 827 (1989). In Rostenberg-Doern, where the plaintiff did not file objections to the referee's report, the court said the failure to "follow the appropriate procedural guidelines" resulted in it being "precluded from reviewing [plaintiff's] claim." Id., 302.
The referee's findings of fact must stand unchallenged because of the absence of valid and proper exceptions, and her conclusion that the plaintiff was entitled to recover $13,668.22, plus prejudgment interest, follows legally and logically from those facts. Therefore, based on the standard of review in Elgarv. Elgar, supra, 238 Conn. 848, the court finds that the referee's recommendations are not illegal or illogical. To the contrary, in the words of Practice Book § 440, her recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, nor any other sufficient reason for rendering the report unacceptable. See Practice Book § 443.
Therefore, as to the complaint, judgment is entered in accordance with the recommendation of the referee in favor of the plaintiff to recover $13,668.22, plus prejudgment interest, pursuant to General Statutes § 37-3a, which amounts to $6,958, for a total recovery due the plaintiff in the amount of $20,626.22. Statutory costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 3rd day of September, 1996.
William B. Lewis, Judge