[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves personal injuries received by an inmate at the Bridgeport Correction Center. The plaintiff, Michael A. Edwards, received permission from the State of Connecticut Claims Commission to sue the defendant, State of Connecticut, as authorized by General Statutes § 4-160.
In his revised complaint dated May 16, 1996, the plaintiff alleges that on March 20, 1990, he was assaulted by other inmates, against whom he subsequently lodged criminal charges. CT Page 7113 The plaintiff also alleges that he was thereafter transferred to Block 38 at the Bridgeport Correctional Center where he was again assaulted on March 26, 1990, while he was in the dayroom of that block. The plaintiff contends that only one corrections officer was assigned to Block 38, whereas the other blocks had two corrections officers on duty. The plaintiff further alleges that when the one corrections officer was patrolling on the first floor of block 38, he could not see what was occurring on the second floor where the dayroom was located. The plaintiff claims that he was severely and permanently injured as a result of the March 26, 1990 assault. The plaintiff further alleges that his injuries were caused by the negligence of the defendant because the defendant placed the plaintiff in a block where only one corrections officer was on duty, who could not see both floors of the block, in spite of its awareness that the plaintiff was at an increased risk. The plaintiff claims that the defendant knew of the danger to the plaintiff because the plaintiff had initiated criminal charges against the perpetrators of the first assault. The defendant filed an answer denying the material allegations of the complaint and a special defense asserting that the plaintiff was contributorily negligent.
This case was referred to Attorney Robert A. Skovgaard, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) while an inmate at the defendant's Bridgeport Correction Center, the defendant was assaulted on March 20, 1990, by fellow inmates Collins and McBride; (2) the plaintiff initiated criminal charges against Collins and McBride for the March 20, 1990 assault, after receiving assurances from one of the defendant's officers that he would be "looked after" if he did file such charges; (3) the defendant knew that inmates who bring criminal charges against other inmates are at a greater than usual risk of further assaults by inmates; (4) the plaintiff was never advised that he could be put in protective custody; (5) after the March 20, 1990 assault, the plaintiff was transferred to Block 38, which houses "non-aggressive" and "model inmates;" (6) inmate McBride was transferred to Block 39, where he could communicate with inmates in the dayroom of the abutting Block 38; (7) the plaintiff became aware on March 26, 1990, that inmate McBride was housed in Block 39 but did not advise any of the corrections officers of this fact; (8) on March 26, 1990, the defendant assigned one corrections officer to Block 38, who went to the bottom or A floor of said block at approximately 2:40 CT Page 7114 p. m., while the plaintiff was in the dayroom on the B floor of Block 38; (9) the corrections officer supervising Block 38 had not been advised that the plaintiff had initiated criminal charges against inmate McBride; (10) at approximately 2:40 p. m. on March 26, 1990, inmate McBride informed inmate Clarke, who was in the dayroom of Block 38 along with the plaintiff, that he, McBride, had been the subject of criminal charges brought by the plaintiff; (11) inmate Clarke and other inmates, reacting to this information from McBride, assaulted the plaintiff, who sustained personal injuries as a result; and (12) the plaintiff was admitted to Bridgeport Hospital for approximately a week and was diagnosed as having internal bleeding and a lacerated spleen, which was surgically removed, leaving a large scar on the plaintiff's abdomen.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the defendant was negligent in failing to take reasonable steps to protect the plaintiff despite its knowledge of the increased risk to his safety by reason of the plaintiff having initiated criminal charges against inmates Collins and McBride; (2) the negligence of the defendant was the proximate cause of the plaintiff's injuries; and (3) the plaintiff was thirty-three and one third percent contributorily negligent in failing to notify a corrections officer of McBride's presence. The referee recommended that judgment enter in favor of the plaintiff for $100,000, less 1/3rd for contributory negligence, for a net recovery of $66,666.67 against the defendant.
Neither the plaintiff nor the defendant moved to correct or to file exceptions to the referee's report as authorized by Practice Book §§ 438 and 439. The defendant did, however, file objections to the report pursuant to Practice Book § 440. In these objections, the defendant contends that: (1) it was not unusual to have only one corrections officer assigned to a block; (2) it was not foreseeable that the plaintiff would be assaulted in Block 38 because the inmates in that block were classified as non-violent; (3) the plaintiff did not offer any expert testimony regarding whether the conduct of defendant's corrections officers was "unreasonable or violated any correctional standards;" and (4) the attorney trial referee had erroneously made the defendant an "insurer" of the plaintiff's safety.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme CT Page 7115 Court recently reiterated in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby, 42 Conn. App. 624, 626,681 A.2d 387 (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.").
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated inRomano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
Because the defendant did not file a motion to correct or exceptions, the referee's factual findings must stand unchallenged. "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v.Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364,367, 508 A.2d 829 (1986). CT Page 7116
Moreover, as to the filing of objections by the defendant, "[s]ection 440 . . . cannot be used to attack findings of fact."Iroquois Gas Transmission System v. Mileski, 43 Conn. App. 47,52, 682 A.2d 140 (1996). "Absent . . . [an] exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51.
Thus, the referee's findings that the defendant was negligent with respect to the safety of the plaintiff cannot be upset by this court. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court. . . . Additionally, [w]e cannot retry the facts or pass on the credibility of . . . witness[es]." (Internal citations omitted; internal quotation marks omitted.) Crepeau v. Gronager,41 Conn. App. 302, 310, 675 A.2d 1361 (1996).
Therefore, the only remaining issue in this case is the validity of the defendant's objection that the plaintiff is not entitled to recover monetary damages because of injuries he received from other inmates. As the United States Supreme Court stated in Farmer v. Brennan, 511 U.S. ___, 114 S.Ct. 1970,1976-77, 128 L.Ed.2d 811 (1994), "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of fellow prisoners." "There is a positive constitutional duty on the part of prison officials to protect the personal security and safety of inmates. . . . Therefore, security and discipline should be paramount concerns of a prison administration; inmates must be protected from violence at the hands of other inmates." Simmat v.Manson, 554 F. Sup. 1363, 1375-76 (D. Conn. 1983).
Because this court may not retry the case, find additional facts or reject facts found by the referee, this court is not authorized to disturb the referee's finding that the plaintiff should recover for his injuries because the defendant was negligent in protecting the personal security of the plaintiff. Therefore, judgment is entered in favor of the plaintiff to recover $66,666.67 from the defendant. Costs shall be taxed by the clerk.
So Ordered. CT Page 7117
Dated at Stamford, Connecticut, this 27th day of December, 1996.
William B. Lewis, Judge