[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between an excavating and paving contractor and homeowners. The plaintiff is Darien Asphalt Paving, Inc. and the defendants are B. Richard Giordano and Steven Dudek, d/b/a Mountainview Associates. CT Page 12373
The plaintiff filed a complaint containing five counts. In the first count, the plaintiff alleges that on or about December 9, 1988, it entered into a contract with the defendants to perform site work at an unimproved lot owned by the defendants and located at 90 Saugatuck Avenue, Westport. The plaintiff further alleges that it performed excavating, grading and related services at said location between December, 1988, and July, 1989. The plaintiff also alleges that it is owed approximately $27,000, which the defendants have refused to pay, as a result of which the plaintiff filed a mechanic's lien in the Westport land records on October 5, 1989. The plaintiff seeks a foreclosure of this lien, damages and related relief.
In the second count, alleging breach of contract, the plaintiff claims that the defendants were obligated originally to pay $39,500 for the plaintiff's services, but subsequently ordered additional work in the amount of approximately $12,500, for a total of $52,000. The plaintiff alleges that there is a balance due of $27,000.
In the third and fourth counts, the plaintiff alleges "quantum meruit" and "unjust enrichment" on the basis that the reasonable value of its labor and material was $52,000. In the fifth count of the complaint, the plaintiff seeks to set aside as fraudulent a conveyance of premises at 37 William Street in Norwalk from Giordano to his wife, Cecelia Lampitelli, dated March 6, 1988, but not recorded until April 3, 1989. The plaintiff bases this claim on its belief that the defendants do not have sufficient equity to satisfy a judgment against the Saugatuck Avenue property in Westport and that the conveyance of the Norwalk property was intended to hinder Giordano's creditors, including the plaintiff.
The defendants' answer admits that they had an agreement with the plaintiff and that the defendants paid the plaintiff $25,000 based on the agreement, but denies the material allegations of the complaint. The defendants also asserted four special defenses. In the first special defense the defendants claim a breach of contract in that the work by the plaintiff was performed improperly and in an unworkmanlike manner. In the second and third special defenses, the defendants contend that the plaintiff performed its services and supervised its employees and subcontractors in a negligent manner. In their fourth special defense, the defendants claim that in May of 1989, an entity CT Page 12374 known as FGB Paving and Excavating Co.(FGB) took over the work remaining to be done by the plaintiff, but that FGB failed to file a trade name certificate, thus violating both General Statutes § 35-1 and General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA). The defendants also filed a two-count counterclaim and set-off. In the first count, the defendants allege that the plaintiff failed to pay them for 22 truckloads of topsoil that the plaintiff removed from the subject premises at 90 Saugatuck Avenue, Westport. In the second count, the defendants repeat their allegations about FGB's failure to file a certificate of trade name.
The case was referred to Attorney Judith Rosenberg, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book (1998 Revision § 19-2). The referee submitted a report finding the following facts: (1) although the plaintiff's "proposal" dated December 2, 1986, for excavation, storm drains, sanitary sewer, backfilling and asphalt was never signed by the defendants, the parties did agree that the plaintiff would perform the work referred to in the proposal, and that said work was worth $39,500 as agreed; (2) the plaintiff performed its work adequately and satisfactorily; (3) the defendants did order certain blasting work, which was worth $6,939, but that this was the only "extra" that the plaintiff was able to prove; (4) in addition to a credit for $25,000 previously paid to the plaintiff, the defendants are entitled to a credit of $510 for a replacement sewer pipe, $407 for a broken sewer line on a neighbors property, $480 for repairs to a drainage line, and $980 for the cost of two drywells, for a total credit or off-set of $2,377, plus $25,000; (5) the defendants did not prove that they were entitled to a credit or set-off for a third drywell, landscaping, and/or for topsoil removed from the subject premises by the plaintiff;[1] (6) the plaintiff did not sustain its burden of proving a fraudulent conveyance of Giordano's William Street, Norwalk, home to his wife, which occurred before the events in this law suit began, even though the deed was actually recorded after the plaintiff started work; (7) the proposal pursuant to which the plaintiff performed its work does not refer to attorney's fees, and although the job tickets, some of which were signed by the defendants, provide for attorney's fees, the plaintiff failed to show any mutual assent or agreement to the payment of such fees; (8) the defendants did not pursue the count of their counterclaim regarding FGB and a failure to register a trade name; and (9) General Statutes § 52-249 regarding the payment of attorney's fees in foreclosure of lien actions is "inapplicable" because it CT Page 12375 only applies to actions where there has been a hearing "as to the form of judgment or the limitation of time for redemption."
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the defendants owe the plaintiff $19,062; (2) the defendants are obliged to pay statutory prejudgment interest pursuant to General Statutes § 37-3a; (3) the plaintiff did not prove that the conveyance of the Norwalk premises was fraudulent; (4) the defendants did not prove their counterclaims; and (5) the matter of attorney's fees should be left to this court as it involves an issue of law.
Pursuant to Practice Book (1998 Rev.) § 19-12, both the plaintiff and the defendants moved to correct the referee's report.[2] The plaintiff asked the referee to: (1) add a recommendation that the plaintiff's mechanic's lien be foreclosed; (2) recommend an award of attorney's fees based on the language of both the proposal submitted to the defendant dated December 2, 1988,[3] and the tickets for extras signed by defendant Dudek;[4] and (3) recommend attorney's fees based on General Statutes § 52-249, which provides for such fees in foreclosure actions.
The defendants' motion to correct sought the addition of findings that: (1) the plaintiff had agreed that it would reimburse the defendants for the topsoil removed from the subject premises at the rate of $17 per yard, and that the plaintiff had removed 594 yards, which was worth $10,098; and (2) the cost for the plaintiff of blasting was not $6,939, but rather only $1,347.
The attorney trial referee declined to make any changes in her report or recommendations in response either to the plaintiff's or to the defendant's motion to correct.
In accordance with Practice Book (1998 Rev.) § 19-13, the defendants thereafter filed exceptions to the referee's report.[5] The exceptions relate to the referee's refusal to make the corrections to her report sought by the defendants in their motion to correct regarding the removal of topsoil and the cost of blasting.
The defendants also filed objections to the report as authorized by Practice Book (1998 Rev.) § 19-14.[6] The objections are similar to the motion to correct and involve the defendants' claims that: (1) they were entitled to compensation CT Page 12376 for the topsoil removed by the plaintiff from their lot; (2) the defendants were obliged to spend $2,200 to purchase topsoil that the plaintiff had removed from their lot; (3) they were overcharged for blasting performed by the plaintiff because the invoice in question includes items that were not part of blasting; and (4) the plaintiff was not entitled to interest based on General Statutes § 37-3a because any money due to the plaintiff was not withheld wrongfully due to the fact that the defendants had asserted special defenses, counterclaims and a set-off.
Thereafter, this matter appeared on the law or motion calendar for judgment on report and objections thereto.[7]
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 848-49, 679 A.2d 937 (1996). There, the court held that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See also TDS Painting and Restoration, Inc. v. CopperBeach Farm, Inc., 45 Conn. App. 743, 751, 669 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997) (the court "cannot find additional facts or reject others unless a material fact has been found without evidence.").
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated in Romano v.Derby, 42 Conn. App. 624, 628, 681 A.2d 387 (1996), "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore CT Page 12377 concluded that judgment should be rendered for the defendant."
The only issue that the plaintiff contests relates to "the ATR report . . . that the documents do not support a claim for attorney's fees." As noted previously, the referee left the decision regarding attorney's fees to the court because it involves the applicability of a statute, General Statutes § 52-249, to this case. Meadows v. Higgins, 49 Conn. App. 286, 291,714 A.2d 51, cert. granted, 246 Conn. 910, ___ A.2d ___ (1998). Thus, this court will hold a hearing on Tuesday, November 10, 1998, at 9:30 a.m. regarding whether legal fees are due to the plaintiff and, if so, how much. This hearing will also include the issue of whether any other document justifies the award of legal fees.
Regarding the defendants' exceptions and objections, the first issue is the matter of topsoil. The referee found that the plaintiff and defendants did not agree that the plaintiff was obliged to pay for the topsoil it removed from the defendants' lot. The transcript furnishes support for this finding.[8]
Regarding the cost of blasting, the plaintiff submitted an invoice dated January 30, 1989 for blasting in the amount of $6,939, which justifies the referee's addition of this amount to that owed by the defendants.[9]
Both the issues of topsoil and blasting are factual determinations that should not be disturbed by this court. In their motions to correct and exceptions, it appears that the defendants are attempting to substitute their own version of the facts concerning these two issues. If the defendants' exceptions were sustained, the court in effect would be retrying the case and reexamining the credibility of the witnesses. This is not permitted. Argentinis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991).
The transcript certainly contains testimony that is contrary to the referee's findings regarding the payment for topsoil. It is obvious, however, that the referee chose to believe testimony presented by the plaintiff. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court."Nor'easter Group, Inc. v. Colossale Concrete, Inc., CT Page 12378207 Conn. 468, 473, 542 A.2d 692 (1988).
Additionally, "[g]reat deference is given to the trial court's findings because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v.Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). A reviewing court should not retry the facts or assess the credibility of the witnesses. The "finder of fact is in a better position to determine the credibility of the witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra, 28 Conn. App. 706. Moreover, the trial court is not bound by the uncontradicted testimony of any witness. Id.
In addition, findings of fact in a contract action should be overturned "only when they are clearly erroneous." WilcoxTrucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425,567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318
(1990). The recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id. Thus, the facts found by the referee are accepted because they find support in the record.
The defendants also dispute the recommendation of the referee that interest be awarded pursuant to General Statutes § 37-3a. "The determination of whether interest pursuant to [General Statutes §] 37-3a should be awarded is a question for the trier of fact." Foley v. Huntington Company, 42 Conn. App. 712,738, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397
(1996). Therefore, this recommendation for prejudgment interest is accepted.
Based on the standard of review outlined in Elgar v. Elgar,supra, 238 Conn. 848-49, the referee's report and recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book (1998 Rev.) § 19-17(a). Judgment hereby enters in favor of the plaintiff that its mechanic's lien be foreclosed. The debt as of the date of judgment is fixed at $19,062, plus prejudgment interest from October 5, 1989, the date the mechanic's lien was filed, to the date of judgment, in the amount of $18,424, for a total debt of $37,486. CT Page 12379
This case should now be claimed for the foreclosure calendar in order to determine the type and date of foreclosure, value of the premises, and other details. Judgment is also entered in favor of the plaintiff with respect to the counterclaim filed by the defendants, with the matter of attorney's fees to be held in abeyance pending the hearing.
Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 30th, day of October, 1998.
William B. Lewis, Judge