[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal pursuant to General Statutes §45a-186 from a decision of the Probate Court of the District of Greenwich, Hon. David R. Tobin. This decision was rendered in connection with a final account submitted by the trustees of a testamentary trust established by Article Fourth B of the last will and testament of Walter Pierson. Pierson died in 1968. The Probate Court rejected the account because the account indicated that Juliet S. Parker-Vidussi was the only beneficiary of the trust estate. The Probate Court directed the trustees to file a new accounting that included a distribution of one half of the remainder of this trust to Walter Pierson, III ("the defendant"). The defendant is Walter Pierson's ("the testator") grandson.
The trust involved in this appeal distributed income to the testator's daughter-in-law, Violet Dixon Pierson,[1] the fourth of his son Warren Pierson's four wives, until her death on January 15, 1996.[2] She was survived by her daughter, the plaintiff, also a granddaughter of the testator, Walter Pierson. The plaintiff's father was the decedent's son, Warren Pierson. The defendant, Walter Pierson, III, is the son of Warren and his second wife. Therefore, the plaintiff is the defendant's half-sister.
The plaintiff's ground for appeal is that the Probate Court misconstrued the terms and intent of the decedent by ordering a distribution of one half of the trust principal to the defendant. The provision of the will that is the subject of this appeal is Article Fourth B, which provides that the principal of this portion of the trust is to be paid "in equal shares per stirpes tothe issue then living of Violet and of my son Warren". The plaintiff is the only issue of Violet and Warren, and the plaintiff and the defendant are the only issue of Warren.
This case was referred to Attorney Dennis G. Eveleigh, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 429, now Practice Book (1998 CT Page 5816 Rev.) § 19-2. The referee conducted a trial and then submitted a report pursuant to Practice Book § 430A, now Practice Book (1998 Rev.) § 19-4. According to the report, pursuant to General Statutes § 45a-186, the referee heard the appeal de novo because no record of the trial in the Probate Court was made. The referee correctly indicates that his task was to make an "independent assessment" of the intent of the testator. See Andrews v. Gorby, 237 Conn. 12, 14-17, 675 A.2d 449
(1996). And, the referee also correctly states that heirs at law are not to be disinherited unless the intent to do so is clear and explicit. See Connecticut Bank Trust Co. v. Coffin,212 Conn. 678, 685, 563 A.2d 1323 (1989).
The referee made the following findings of fact: (1) the plaintiff is the only person who is the issue of both Violet Dixon Pierson and Warren Pierson, because the defendant's mother was another of Warren Pierson's four wives; (2) in a 1966 codicil, the testator reduced the legacy of his son, Warren, from $15,000 to $5,000, and the legacy of his grandson, the defendant herein, from $5,000 to $1,000, but in the same codicil the testator also bequeathed a legacy of $1,000 to his granddaughter, the plaintiff; (3) the testator's will did not require that Violet Dixon Pierson remain married to his son, Warren, in order to maintain her status as sole income beneficiary for life; (4) the use of the second "of" is significant and is not superfluous because the testator could readily have referred to issue of Violet and Warren, or issue of Violet by Warren, but instead provided for the issue of Violet and of Warren; and (5) the testator's intent to include his grandson as a remainderman is clear.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the will divides the remainder into two parts before ascertaining the remaindermen and therefore the plaintiff is not entitled to a one-half share as the only issue of Violet Dixon Pierson and a portion of the other one-half as one of two children of Warren Pierson; and (2) the testator did not intend to disinherit his grandson, the defendant herein, who is an heir at law of the testator. The referee recommended that one-half of the principal of the Article Fourth B trust be distributed to the plaintiff and one-half to the defendant as determined by the Probate Court.
The plaintiff did not move to correct the report as authorized by Practice Book § 438, now Practice Book (1998 CT Page 5817 Rev.) § 19-12.[3] The plaintiff also did not file exceptions to the report as authorized by Practice Book § 439, now Practice Book (1998 Rev.) § 19-13.[4] She did, however, file objections to the report dated October 14, 1997, pursuant to Practice Book § 440, now Practice Book (1998 Rev) § 19-14.[5]
In these objections, the plaintiff contends that the referee erred in failing to find that the testator intended the plaintiff as the only beneficiary of his trust estate based on (1) testimony of the scrivener of the will, Attorney Everett Fisher, that the testator was very fond of his daughter-in-law and her daughter, the plaintiff in this action; (2) the decrease in the legacies left to the testator's son and grandson; (3) that if the testator had intended to benefit the defendant, he would have referred to "the issue of Warren" rather than to the issue of Violet and of Warren, which restricted distribution only to a child of both Violet and Warren; and (4) the use of the term "per stirpes" refers to Violet as the "head" of the "stirpes" and hence the remainder of the trust should pass only to her issue.
This court's scope of review of an attorney trial referee's report regarding the facts of a given case, was reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839, 848-49,679 A.2d 937 (1996): "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoTDS Painting and Restoration, Inc. v. Copper Beach Farm, Inc.,45 Conn. App. 743, 751, 699 A.2d 173, cert denied, 243 Conn. 908,701 A.2d 338 (1997).
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court generally has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. CT Page 5818 The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct."
The plaintiff did not file a motion to correct or exceptions to the report because the facts are not in dispute. However, the absence of such a motion and exceptions means that the referee's factual findings must be accepted. Tarka v. Filipovic,45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903,697 A.2d 363 (1997). Practice Book § 439, now Practice Book (1998 Rev.) 19-13.
Moreover, regarding the filing of objections by the plaintiff, Practice Book § 440, now Practice Book (1998 Rev.) § 19-14, "cannot be used to attack findings of fact." Iroquois Gas TransmissionSystem v. Mileski, 43 Conn. App. 47, 52, 682 A.2d 140, cert. denied,239 Conn. 936, 684 A.2d 707 (1996). "Absent such a motion [to correct] and a subsequent exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51. The referee's task was to "ascertain and effectuate" the testator's intent. Canaan National Bankv. Peters, 217 Conn. 330, 335, 586 A.2d 562 (1991). "In seeking that intent, the court looks first to the will itself and examines the words and language used in the light of the circumstances under which the will was written." (Internal quotation marks omitted.) Dei Cas v. Mayfield,199 Conn. 569, 572, 508 A.2d 435 (1986). "The question is not what [the testator] meant to say, but what is meant by what he did say."Connecticut Junior Republic v. Sharon Hospital, 188 Conn. 1, 20,448 A.2d 190 (1982).
The role of the court and, in this case, the attorney trial referee is summarized as follows: "[W]e cannot rewrite . . . a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the . . . settlor whenthe instrument was executed, including the condition of his estate, his relations to his family and beneficiaries, and their situation and condition. The construing court will put itself as far as possible in the position of the . . . [settlor], in the effort to construe . . . [any] uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention. . . . But [t]he quest is to determine the meaning of what the . . . [settlor] said and not to speculate about what he meant to say." (Citations omitted; emphasis added; internal quotation marks omitted.) Connecticut Bank Trust Co. v.CT Page 5819Lyman, 148 Conn. 273, 278-79, 170 A.2d 130 (1961).
The referee found as a fact that the testator intended to treat his two grandchildren equally. The testator did not restrict the distribution of the principal to, a child of both Violet Dixon Pierson and Warren Pierson, which he could have accomplished readily. Moreover, according to the referee, it was significant that the testator used a second "of" by referring to the issue of Violet and of Warren. The referee also noted that at the same time the testator reduced the legacy for the defendant to $1,000, he also bequeathed the exact same sum to the plaintiff. Also, it appears that both the plaintiff and the defendant are the "heads" of the respective stirpes, but this does not impact on the referee's finding that the testator's intent was to benefit both of his grandchildren equally.
"A conclusion as to the intent of the parties must stand unless it is one that a trier could not reasonably reach." Foleyv. Huntington Company, 42 Conn. App. 712, 730-31, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). In the present case, the determination of the intent of the testator is a fact finding function within the ambit of the attorney trial referee. And, this court finds that "the subordinate facts were sufficient to support the ultimate factual conclusions." Iroquois GasTransmission System v. Mileski, supra, 43 Conn. App. 51.
Based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. 848-49, the referee's report and recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 443, now Practice Book (1998 Rev.) § 19-17. Judgment may enter in favor of the defendant dismissing the appeal by the plaintiff, and affirming the decision of the Probate Court disallowing the account showing the plaintiff as the only beneficiary of the trust estate.
Costs are to be taxed in favor of the defendant by the office of the chief clerk in accordance with General Statutes § 52-257
and Practice Book § 412, now Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of May, 1998.
William B. Lewis, Judge CT Page 5820